William J. CAMPBELL, Executor of the Estate of Lois King Campbell, Deceased, Appellant,

v.

Charles A. VOSE et al., Appellees.

No. 74–1157.

United States Court of Appeals, Tenth Circuit.

April 14, 1975.

Charles N. Berry, Jr., Oklahoma City, Okl., for appellant.

Judson S. Woodruff, Oklahoma City, Okl. (Gary F. Fuller, John E. Sargent,

Jr., and McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl., of counsel, with him on the brief), for appellees.

Before SETH, BARRETT and DOYLE, Circuit Judges.

SETH, Circuit Judge.

This is an action brought by a minority stockholder as a derivative action, and as a dissenting shareholder against corporate officers and others. The trial court dismissed plaintiff's First Cause of Action, a derivative cause, alleging that the corporation president, or a corporation he controlled, borrowed corporate funds for the use of the president's family partnerships and corporations. The trial court's determination of the issue raised in the Second Cause was not appealed. The Third Cause of Action asserted that plaintiff was entitled to the rights of dissenting shareholders under Oklahoma statutes relating to the sale of all, or substantially all, of the corporate assets, or in the event of a corporate "reorganization." The trial court concluded that the transaction attacked the creation of a wholly-owned subsidiary, and the transfer to it of certain assets of the parent corporation was not an event giving rise to rights of dissenting stockholders.

The plaintiff has taken this appeal.

The plaintiff, by the First Cause of Action in the Second Amended Complaint, seeks an accounting and to impose a constructive trust on the "profits" made by the defendants, by named individuals, and by organizations designated as "Vose family entities," from loans made to them directly or indirectly by the Southwestern Cotton Oil Company. These profits were asked to be held for the benefit of the Cotton Oil Company.

In this First Cause of Action, the plaintiff does not seek the remedy provided by statute which is repayment of the loans with interest. Plaintiff does not assert that interest was not paid on the loans. It is clear also from the trial court's findings that the loans were repaid or will be in the ordinary course of business. The plaintiff-appellant on appeal does not challenge these findings. Furthermore, as the issues reach us, the appellant does not urge that more interest on the loans should be recovered from the officers and directors of the Cotton Oil Company. Appellant in his opening brief states:

> "In any event, it is Campbell's position that proper recovery for money borrowed from The Company is an accounting for profits and not a 'reasonable fair amount of interest.'"

Also in the Reply Brief appellant states:

> "Campbell does not seek to have the money repaid, nor is Campbell demanding that the erring President pay more interest, nor is Campbell looking to the other Directors to guarantee payment. These are the situations that are covered by Title 18 O.S.A. 1.175."

The appellant continues to urge that the statute is not applicable to the "Complaint." Thus it is apparent that the appellant does not assert that the interest paid to the Cotton Oil Company on the loans was not sufficient, nor that the loans were not repaid. Appellant seeks only to have a constructive trust imposed on the "profits" as a remedy separate from, and as an alternative to, 18 O.S.A. § 1.175. The issue thus arises as to whether the statutory remedy is exclusive. The trial court held it was.

The Oklahoma statutes prohibit loans of corporate funds to the directors or officers (18 O.S.A. § 1.175). The same section states that if a loan is made in violation of the "foregoing provisions," all assenting directors and officers of the corporation shall be liable to the corporation "for the debts of such corporation" in an amount not exceeding the amount of the prohibited loan "with interest." Thus the "penalty" or liability is prescribed in the statute following the statement of the prohibition. It is apparent that in a proper action, the penalty or liability of the directors under these provisions could be enforced. In

this sense the statute provides a "remedy."

The Oklahoma Supreme Court, in Dobry v. Dobry, 324 P.2d 534 (Okl.1958), considered a stockholders' suit directed to the loans of corporate funds which were apparently in the form of drawing accounts. The action was for an accounting, but the issue narrowed down to whether the payment of interest on the loans, since repaid, was required. The court held not, but did not discuss the possibility of other remedies. The Supreme Court of Oklahoma in Adams v. Mid-West Chevrolet Corp., 198 Okl. 461, 179 P.2d 147 (1947), in its syllabus stated that when loans of corporate funds are made to directors or officers by advances against salary or dividends, the money with interest may be recovered or the corporation may ". . . where property has been purchased with the money so withdrawn, elect to compel the return of the money with interest or require the holding of the property subject to a trust . . ." for the benefit of the corporation. The court further said: "But, where the money has been fully repaid, the corporation may not retain the money and at the same time secure the property so purchased." The court required that interest on advances should be paid. The basic dispute in the last cited case concerned the purchase of corporate shares by officers apparently with funds advanced by the corporation. The court held that this was not contrary to the corporate opportunity doctrine. The appellant urges that the case of Wilshire Oil Co. of Texas v. Riffe, 381 F.2d 646 (10th Cir.), is applicable to these facts. That case concerned the entry into a competitive business of an employee of a corporation in violation of his contract of employment. This creates much different considerations than are here present, and we cannot consider the opinion to be applicable here other than to underline the general fiduciary duty owed by a corporate officer to the corporation he serves. Appellant also urges that we consider Balch v. Investors' Royalty Co., 7 F.Supp. 420 (N.D.Okl.). The case is

significant but concerned the secret use of corporate funds by a corporate officer and used to buy for himself an interest in a lease within the corporate opportunity doctrine. The lease interest was something directly within the purposes and active business of the corporation. Thus this cited case concerns another facet of the actions of corporate officers not here involved.

■ We must hold that the trial court was correct in holding that the statute prohibiting the loans also provides the remedy and thus creates the exclusive method for a plaintiff to attack or seek redress in the event the statute is violated.

The money borrowed from the Cotton Oil Company was not used in violation of the corporate opportunity doctrine. The plaintiff-appellant urges that some of the borrowers purchased tax-exempt municipal bonds with the proceeds of the loans, and that the Cotton Oil Company could have done the same thing and received some tax benefits. This is really a complaint about the corporate investments or of management thereof. Certainly tax-exempt bonds were available to the corporation. This matter of the nature of investments was the subject of the Second Cause of Action, and no appeal was taken from the trial court's action thereon. The corporate opportunity doctrine is a matter separate and apart from the cause of action alleged by the plaintiff.

The record demonstrates that the majority stockholders, and the president, directed the corporate investments and activities with a view to capital appreciation and not current income. It appears that the corporation did accumulate income to an extent that corporate structures and procedures were changed to reduce current income. The appellees' brief states that the corporate investment policy was to ". . . invest in common stocks which offered potential for above average appreciation. . ." This direction of corporate activity is a matter related to the creation of the

subsidiary hereinafter considered and was apparently a significant factor therein.

The Third Cause of Action in the complaint is directed to the rights of minority stockholders when the corporation is "reorganized" or when it sells "all" or "substantially all" of its assets. A remedy is provided in such circumstances by 18 O.S.A. §§ 1.164 and 1.170a. The trial court concluded as a matter of law that the creation of a wholly owned subsidiary corporation, and the transfer to it of the land and plant of the Cotton Oil Company without a stockholders' vote, was not an event under Oklahoma law which would give rise to rights in the dissenting stockholders to have their shares redeemed.

This issue of dissenters' rights was advanced by the plaintiff by asserting that the creation of the subsidiary with the transfer of assets to it by the Cotton Oil Company was a "sale, lease, exchange or other disposition of all or substantially all of its assets," as contemplated in 18 O.S.A. § 1.164. This section requires shareholder approval of such a transaction, and section 1.157, subd. b thereof creates rights in the minority stockholders who do not consent.

The figures used by the trial court and in the corporate balance sheet at the time of transfer show that about one-third of all corporate assets were transferred to the subsidiary in exchange for stock and for debentures. The debentures totaled $330,000 and the par value of the stock of the subsidiary was $150,000. The book value of the tangibles transferred was about $495,000, and the assets retained had a value at cost of $981,095, using the figures in the corporate resolutions. These figures are characterized as "cost" figures or as the corporate "investment" in certain assets. Apparently no attempt was made to relate the numbers to current values. Some testimony places the actual value of the land much higher but with no definite figures used. The record shows that the land, buildings, machinery, inventory, and all tangibles of the company were transferred. The assets retained were bank balances, promissory notes, and the investment portfolio, consisting of common stocks. Thus all the operating property and tangibles that remained of the old Cottol Oil business were transferred. The surpluses and accumulated earnings were retained as represented in the investments and bank accounts. The record shows that the tangibles were instrumental in creating the current income of the corporation which had been a problem to management. This was removed by the transfer and the creation of the debt.

The appellees argue that the transfer was not a "sale" as urged by appellant. Appellees state in their brief that since the transferee was a wholly-owned subsidiary, the parent corporation still had enough "control" over the assets to prevent the transaction from being a sale. Thus the appellees in their brief say:

"In this case, the property which was transferred is still subject to the Company's use, possession and control since Machine Works is a wholly owned subsidiary of the Company."

It is difficult to see how there could be any real corporate entity for the subsidiary for any purpose if the assets transferred are in the present corporation's "possession," and within its control. Perhaps no transfer was actually made if the assets remain in the transferor's "possession" as the appellees urge. If this is the case, we may have no problem, but if the parent company has the usual relationship with the subsidiary and an actual transfer was made, which we assume on the basis of the trial court's findings, then the parent divested itself of possession and title to the assets, and placed them in the possession and control of the subsidiary. Thus it looks more like a sale or "other disposition" under the statute than anything else. An exchange for stock and for evidence of indebtedness was made, and the indicia of ownership were held by the subsidiary. We must hold that the

transaction did bring into play the statutory rights of dissenting shareholders, contrary to the trial court's conclusion.

We have considered Collinsville Nat'l Bank v. Esau, 74 Okl. 45, 176 Pac. 514 (1918), cited by the appellees on the elements and consequences of a sale. The case is applicable as a definition, and we feel that it indicates the result of the transaction with the subsidiary which we here reach. The indicia of ownership it refers to passed to the subsidiary in exchange for stock and evidences of indebtedness.

The "all" or "substantially all" of the assets presents another issue, and is also a condition which must exist before the statute comes into play. The statute is in purely quantitive terms, but the appellant urges that other considerations exist because the assets transferred were all the "operating assets," and only money or investments remained. The record shows that the Cotton Oil Company had engaged in dual activities for several years, the plant operations (storage and machine shops) on one hand, and investments of the accumulated earnings on the other hand.

■ In the corporate resolution relating to the transfer, the recitation is made that the desire was to separate the "operating business activities from its investment activities." About this time, the Cotton Oil Company was changed into a personal holding company for tax purposes. The time that this took place is not clear from the record, but it was apparently related to the need for corporate changes to meet the problems arising from the accumulation of income. Such a change was substantial. Thus the corporate changes surrounding the creation of the subsidiary, the separation of the business activities with the result that the parent corporation has only investments, makes the transfer of assets have much different implications than it would ordinarily have. There is also the accompanying problem that really no values were established relating to the same standard, or related to current conditions. The consequences of the creation of the subsidiary discussed above with the fact all operating assets were transferred to it, together with the debt back makes the transaction a sale and results in a situation where for all practical purposes, "substantially" all of the assets were sold. All the effective operating assets were sold. The investment segment remaining was large in dollars but was the last and a large step in the change in the nature of corporate activity. In these circumstances, more than dollar values must be considered. It was another significant step also in the prevention of current income which was another aspect of the change in corporate purpose. The transaction was thus one which required consideration by the stockholders, and gives rise to the rights of dissenting shareholders under the Oklahoma statutes.

The judgment is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.