Daniel STERMAN, Patricia Sterman, and Harris Sterman, Plaintiffs-Appellants,

v.

Philip W. HORNBECK, Jean M. Hornbeck, L. James Deutsch, and Gervais M. Deutsch, Defendants-Respondents.†

Court of Appeals

*No. 89-1179. Oral argument March 1, 1990—Decided May 2, 1990.*

(Also reported in 457 N.W.2d 874.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Daniel W. Stevens* of *Esser,*

*Dieterich & Stevens* of Menomonee Falls and oral argument by *Daniel W. Stevens.*

On behalf of the defendants-respondents, the cause was submitted on the brief of *James C. Herrick, Jr.* of *Herrick & Fry, S.C.* of Fond du Lac and oral argument by *James C. Herrick, Jr.*

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J. Harris Sterman appeals from a judgment dismissing his action for rescission of a sales contract between Wisconsin Electronics Supply Co., Inc. (WES), seller, and Philip Hornbeck and L. James Deutsch, purchasers.[1] Harris claims he is a stockholder in WES and that the corporation sold substantially all of its assets to Hornbeck and Deutsch without stockholder notice or approval contrary to sec. 180.71, Stats.; therefore, Harris argues that the sale should be rescinded.

The trial court concluded that sec. 180.71, Stats., was inapplicable because "all, or substantially all" of the corporation's assets had not been sold. *Id.* Thus the court did not reach the question of whether the statute had been violated and, if so, whether Harris is entitled to rescission.

We conclude that the corporation sold substantially all of its assets within the meaning of sec. 180.71, Stats. Accordingly, we reverse the judgment dismissing Harris' action. We remand this case for the trial court to deter-

---

[1]The trial court also dismissed the claims of Harris' son and daughter-in-law who are also designated as appellants. However, the dismissal of their claims is not challenged in the appellants' brief. Moreover, at oral argument, counsel for the appellants stated that the only claim and interest pursued on appeal was that of Harris.

mine if the statute was violated and, if so, whether Harris is entitled to rescission of the sales contract.

This action arose out of a sales transaction in which WES, as the selling corporation, transferred certain corporate assets and liabilities to Hornbeck and Deutsch for $300,000, pursuant to an "Agreement for Purchase of Business." The sale included the corporate name, inventory, shop equipment, vehicles, accounts receivable, accounts payable, office equipment and leasehold improvements. The corporation, renamed Harris Radio Corporation after the sale of its previous name, retained four automobiles, a tractor, boat, trailer and motor, and $190,000 in corporate loans to Harris' two sons. The corporate documents transferring the property were signed by Harris' son, Daniel, who represented to the corporation's attorney and to the purchasers and their attorney that he was the president and sole stockholder of WES.

Harris first learned of the sale after the contract had been executed and he immediately informed Daniel that he had grossly undersold the business. Daniel then attempted to buy back the corporate assets. The purchasers refused this proposal. Daniel, his wife Patricia, and Harris then commenced this rescission action.[2] Daniel alleged that his alcohol abuse rendered him incompetent at the time of sale. Patricia alleged that she did not consent to the sale and asserted rights under the Marital Property Act. Harris alleged that he was a stockholder in WES and that the corporation had sold substantially all of its assets without stockholder notice or approval in violation of sec. 180.71, Stats.

The case was tried to a jury. Daniel's and Patricia's claims were dismissed on motions after verdict and are

[2]The complaint also alleged other causes of action not material to this appeal.

not at issue on this appeal. Therefore we set out only that evidence relative to Harris' claim. In 1947 Harris and two partners incorporated under the name Harris Radio Corporation and opened a retail store for electronics parts and equipment. In 1961 Harris became the sole stockholder. Over the ensuing years he gave stock to Daniel and the corporate name was changed to Wisconsin Electronics Supply Co., Inc. In 1972 Harris retired and Daniel was elected corporate president. After 1972 Daniel made the business decisions, including purchasing two additional stores, without stockholder or board of directors meetings.

At the time of the sale on May 9, 1986, Daniel was unable to produce the corporate books, but represented that he was the sole stockholder in the corporation and signed several corporate documents to that effect. At trial, Daniel testified that he was not sure if Harris owned any stock in the corporation, that Harris' mental health had been deteriorating since 1971, and that Harris could not function anymore. Daniel explained that he did not have the corporate book at the time of the sale because Harris kept the book with him at all times out of a paranoid belief that the Mafia was after him and the corporation. The corporation's attorney testified that prior to the May 9, 1986 sale he received a statement from Harris, dated February 1985, in which Harris disclaimed ownership in any stock of the corporation, and declared that he had transferred all of the stock to Daniel and that any "non-sale" restrictions on the stock were released. However, stock certificates from the corporate books produced at trial showed that Harris still owned stock in the corporation at the time of sale in 1986. Harris did not testify.

A special verdict was submitted to the jury which made the following findings as to the circumstances sur-

rounding the sale: Daniel did not own two-thirds or more of stock of WES; the purchase price was not grossly inadequate; the fair market value of the business was $350,000; Hornbeck and Deutsch were bona fide, good-faith purchasers; Daniel represented to the purchasers that he was duly authorized to act on behalf of WES; and the purchasers believed such representations to be true and justifiably relied upon them. The special verdict did not specifically inquire as to Harris' stock ownership.

The trial court granted judgment on the verdict, dismissing all causes of action against the purchasers. Harris objected, claiming that the sale should be rescinded because it was accomplished in violation of sec. 180.71, Stats. The court concluded that the statute did not apply to the sale because "all, or substantially all," of the corporation's assets were not sold. *Id.* Therefore, the court did not determine if the statute was violated.

In determining that the statute did not apply, the trial court reasoned that while the value of the assets transferred was $350,000, an additional $190,000 in corporate loans to Harris' sons—roughly one-third of the corporate assets—was not transferred. Thus, the court concluded the sale did not involve "all, or substantially all" of the corporate assets. Judgment was entered dismissing the complaint. Harris appeals.

The issue on appeal is whether "all, or substantially all" of the assets of WES were transferred within the meaning of sec. 180.71, Stats.[3] The statute reads in rele-

---

[3] Harris did not raise this issue until his reply brief. Generally, we will not review error raised for the first time in a reply brief. *State v. Lewandowski,* 122 Wis. 2d 759, 763, 364 N.W.2d 550, 552 (Ct. App. 1985). However, we choose to review the issue raised by Harris' reply brief since the respondents have not objected either by motion or at oral argument.

vant part:

> A sale, lease, exchange or other disposition of *all, or substantially all,* the property and assets . . . of a corporation, if not made in the usual and regular course of its business, may be made upon such terms and conditions and for such consideration . . . as may be authorized in the following manner:
>
> (1) The board of directors shall adopt a resolution recommending such sale, lease, exchange, or other disposition and directing the submission thereof to a vote at a meeting of shareholders . . ..
>
> (2) Written notice shall be given to each shareholder of record, whether or not entitled to vote at such meeting, not less than 20 days before such meeting . . ..
>
> (3) At such meeting the shareholders may authorize such sale, lease, exchange or other disposition and fix, or may authorize the board of directors to fix, any or all of the terms and conditions thereof and the consideration to be received by the corporation therefor. Such authorization shall require the requisite affirmative votes [of two-thirds the shares entitled to vote].

*Id.* (emphasis added).

We turn first to our standard of review. The purchasers argue that the trial court's ruling presents a question of fact and thus must be upheld unless clearly erroneous. We disagree. The question of whether these assets constitute "all, or substantially all" of the corporate assets within the meaning of sec. 180.71, Stats., requires the application of the statute to a set of facts. While the underlying facts, whether decided by the jury or the court, are entitled to deference under sec. 805.17(2), Stats., and the "clearly erroneous" standard of review, the ultimate application of the statute to those

facts is a question of law which we review without deference to the trial court's ruling. *L & W Constr. Co. v. Wisconsin Dep't of Revenue*, 149 Wis. 2d 684, 688, 439 N.W.2d 619, 620 (Ct. App. 1989).

There is no Wisconsin case law construing sec. 180.71, Stats. Therefore, before we can apply the facts of this case we must interpret the statute, specifically the meaning of "substantially all." This also is a question of law to which we apply an independent standard of review. *L & W Constr. Co.*, 149 Wis. 2d at 688, 439 N.W.2d at 620.

In interpreting sec. 180.71, Stats., we must attempt to ascertain the intent of the legislature by giving the language of the statute its ordinary and accepted meaning. *Sturgis v. Town of Neenah Bd. of Canvassers*, 153 Wis. 2d 193, 198, 450 N.W.2d 481, 483 (Ct. App. 1989). Only if the language is ambiguous are we permitted to look beyond the statutory language and examine the scope, history, context, subject matter and object of the statute to discern legislative intent. *Id.* A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in more than one way. *Id.* Whether a statute is itself ambiguous is a question of law. *Knights of Columbus v. Wisconsin Bingo Control Bd.*, 151 Wis. 2d 404, 408, 444 N.W.2d 447, 449 (Ct. App. 1989).

The purchasers contend that whether "substantially all" of the corporate assets have been conveyed should be a quantitative inquiry measured strictly by monetary standards. Under this approach, the purchasers note that the corporation retained substantial assets—corporate loans in the amount of $190,000 to Harris' two sons. Therefore, the purchasers argue that

the trial court correctly determined that "substantially all" of the corporate assets had not been sold. Harris argues that the inquiry should be a qualitative one—whether the corporation intends to and can meaningfully continue the corporate enterprise in light of the sale.

We conclude that the statute is reasonably subject to both the purchasers' quantitative analysis and Harris' qualitative analysis. Thus, the statute is ambiguous and we must look beyond its language to construe its meaning.

The "substantially all" language of sec. 180.71, Stats., was created in 1951 as part of a complete revision of the Wisconsin Business Corporations Law. Sec. 7, ch. 731, Laws of 1951. Substantively, this section is nearly identical to sec. 12.02 of the Model Business Corporation Act. *See Model Business Corp. Act Ann.* sec. 12.02 (Prentice Hall 1989 Supp.). An accompanying note to the Model Act explains in part:

> The phrase "substantially all" is synonymous with "nearly all" and was added merely to make it clear that the statutory requirements could not be avoided by retention of some minimal or nominal residue of the original assets. A sale of all the corporate assets *other than cash or cash equivalents* is normally the sale of "all or substantially all" of the corporation's property.

Official Comment, *Model Business Corp. Act Ann.* sec. 12.01 (Prentice Hall 1987 Supp.) (emphasis added).

Similar provisions relating to the transfer of "substantially all" corporate assets have been adopted in all fifty states. *Model Business Corp. Act Ann.* sec. 12.02, at 1331–32 (1989 Supp.). Several states have had occasion to interpret the phrase "substantially all," and have

564

found it applicable to the sale or transfer of major assets which change the nature of the corporate business or purpose. 6A W. Fletcher, *Cyclopedia of Corporations* sec. 2949.4, at 775 (perm. ed. 1989).

In *Prince George's Country Club, Inc. v. Edward R. Carr, Inc.,* 202 A.2d 354, 359 (Md. 1964), the court held that a sale which serves to destroy the fundamental purpose for which the corporation was organized is a sale of "substantially all" the corporate assets within the meaning of the statute. *See also Schwadel v. Uchitel,* 455 So. 2d 401, 403 (Fla. Dist. Ct. App. 1984) (test is whether sale served to destroy the fundamental purpose for which the corporation was organized). Thus, even when the dollar amount of the assets retained by a corporation is substantial, the sale can still involve "substantially all" the corporate assets within the meaning of the statute if the sale changes the nature of the corporate activity. *Campbell v. Vose,* 515 F.2d 256 (10th Cir. 1975). In *Campbell,* a corporation which transferred assets worth only one-third the book value of the corporation was held to have transferred "substantially all" of the corporate assets. *Id.* at 259–60. The transferred assets were for all practical purposes the operating assets of the corporation. *Id.* at 260. The Tenth Circuit held that, in determining if the statute was implicated, "more than dollar values must be considered." *Id.* The determinative factor is whether the sale changes the nature of the corporate activity. *Id.*

In this case, the corporation transferred two-thirds of its assets, including the corporate name, all its inventory, shop equipment, vehicles, accounts receivable, accounts payable, office equipment and leasehold improvements. The one-third of the corporate assets retained by the corporation consisted of promissory notes worth approximately $190,000, plus several vehi-

cles of nominal value. WES was organized to retail electronic parts and equipment. Although the corporation retained a substantial dollar value in assets, the fundamental purpose for which the corporation was organized and which it pursued during its pre-sale existence was eliminated as a result of the sale. With the transfer of all of its operating assets to Deutsch and Hornbeck the nature of the corporate activity changed from an active, ongoing retail electronic business operation to a latent holder of several corporate notes.

██

We agree with the rationale of the foregoing line of cases and commentary. Shareholder notification and participation in the corporate decision to abandon the corporate enterprise may be as, or more, important to certain shareholders than the dollar value of assets conveyed or retained. We therefore conclude that the sale here involved "substantially all" of the corporate assets, within the meaning of sec. 180.71, Stats. Because the statute applies to this sale, the judgment of the trial court dismissing Harris' cause of action under the statute must be reversed.

Having concluded that sec. 180.71, Stats., applies, Harris asks that we go further and determine that the transaction was executed contrary to the statute, entitling him to rescission of the sale. Although we explored this question with counsel at oral argument, based upon our examination of the full record, we conclude that Harris' request is premature. The trial court did not reach the issue of whether the sale was accomplished in violation of the statute because the court concluded that the statute did not apply. Moreover, even if the statute was violated, the question remains as to whether Harris is entitled to rescission.

In addition, a number of *potential* subissues remain unresolved. Although there is a jury finding as to the extent of Daniel's stockholdings, there is no express finding as to whether *Harris* is a stockholder and thus entitled to protection under sec. 180.71, Stats. We are not a factfinding court. The purchasers raise various defenses—including estoppel—which the trial court may have to consider. Implications of the law regarding *ultra vires* and *intra vires* corporate acts may also bear upon whether the statute applies. By these remarks, we do not require or imply that these matters must be addressed on remand. That is for the parties and the trial court to decide. We cite these only in explanation of why we do not address the further issues which Harris raises on appeal. We leave the course of the future proceedings to the judgment of the parties and the trial court.

*By the Court.*—Judgment reversed and cause remanded.