STATE OF NEBRASKA EX REL. COLUMBUS METAL INDUSTRIES, INC., ET AL., APPELLANTS, V. AARON FERER & SONS CO., A NEBRASKA CORPORATION, ET AL., APPELLEES.

725 N.W.2d 158

Filed December 22, 2006.   No. S-05-565.

Sam R. Brower and Thomas C. Lauritsen, of Andersen, Lauritsen & Brower, for appellants.

Thomas J. Culhane, of Erickson & Sederstrom, P.C., for appellees.

Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Appellants, Columbus Metal Industries, Inc.; Commercial Metal Co.; Alpert & Alpert Iron & Metal, Inc.; A. Tenenbaum Co., Inc.; Central Nonferrous, Inc.; Michael Rosenberg; Colonial Metals Co.; Copperweld Corporation; Essex International, Inc.; Joseph Behr & Sons, Inc.; Joseph Simon & Sons, Inc.; Leonard Levine Metals Corp.; TJN Enterprises, Inc.; Lozier Corporation; Mandel Metals, Inc.; National Compressed Steel Corporation; Owen Industries, Inc., doing business as Paxton & Vierling Steel Co.; Prudential Securities Incorporated, formerly known as Bache & Co., Inc.; Shine Bros. Corp.; Sioux City Compressed Steel Co., Inc.; State Steel Supply Co., Inc.; and Prolerized Schiabo-Neu, now known as Hugo Neu Schnitzer East, are all shareholders of appellee Aaron Ferer & Sons Co. (AFS). Appellants initiated this action on June 2, 2004, in the district court for Douglas County seeking a writ of mandamus directing AFS and appellees Matthew Ferer and Whitney Ferer, members of the board of directors of AFS, to comply with Nebraska's Business Corporation Act dissenters' rights statutes, Neb. Rev. Stat. § 21-20,137 et seq. (Reissue 1997) (dissenters' rights statutes) by providing appellants with dissenters' rights, which would result in appellants' receiving the fair value of their AFS shares of stock from AFS. Appellants alleged they were entitled to their dissenters' rights as a result of certain sale transactions entered into by AFS and further as a result of a notice AFS provided to its shareholders of a special meeting during which shareholders would vote on whether to approve the sale transactions. The district court concluded that the sale transactions did not constitute a sale of all or substantially all of the property of AFS and further that the notice provided by AFS to appellants did not give rise to dissenters' rights. The district court dismissed appellants' complaint, and appellants have appealed. We conclude that neither the sale transactions nor the notice gave rise to dissenters' rights for appellants and that, therefore, appellants had no clear right to the relief they sought. Accordingly, the

district court did not err in denying the writ of mandamus and dismissing the case. We affirm.

## STATEMENT OF FACTS

AFS is a Nebraska corporation, with its principal place of business in Omaha, Nebraska. Prior to the fall of 2001, the corporate headquarters of AFS were located at 909 Abbott Drive, where AFS owned an approximately 14-acre scrapyard on which it operated a scrap metal business, among other enterprises. Appellants are former AFS creditors who, as a result of a bankruptcy workout plan in the 1980's, were issued shares of AFS stock and thus became AFS shareholders. Matthew and Whitney are also AFS shareholders, and they own approximately 70 percent of the stock of AFS.

In the mid-1990's, the city of Omaha became interested in purchasing AFS' Abbott Drive property for redevelopment purposes. AFS resisted the city's efforts until March 2001, when, under threat of condemnation from the city, AFS entered into a real estate purchase agreement with the Omaha Development Foundation which was operating on behalf of the city of Omaha. AFS agreed to sell its Abbott Drive property to the city for $14 million (the City of Omaha agreement). The $14 million amount was composed of $6 million for the purchase of the property and $8 million for relocation assistance. The agreement was signed on March 10 and required AFS to vacate the property by September 25.

At the time AFS entered into the City of Omaha agreement, it was engaged in three lines of business: the purchasing and processing of scrap metal, which business it conducted at its scrapyard on Abbott Drive (the scrap metal operation); the trading of ferrous and nonferrous metals, which business it conducted in Omaha as well as in China and South America (the metal trading operation); and the demilitarization of military ordnance, which business it conducted either in Omaha or at or near the military base where the materials were located (the demilitarization operation). The scrapyard was not necessary to either the metal trading or the demilitarization operations. In the time period from 1992 to 2001, the metal trading and demilitarization operations constituted approximately 80 percent of

AFS' sales and more than 90 percent of its profits. The scrap metal operation was profitable 4 out of the 9 years and produced less than 7 percent of AFS' total profits during that time period.

Because of concerns about finding a new location from which it could operate its scrap metal operation following the sale of its Abbott Drive property, on March 7, 2001, AFS entered into an agreement with Alter Trading Corporation to sell to that company certain inventory and equipment related to the scrap metal operation for approximately $1.5 million (the Alter agreement).

Despite entering into the City of Omaha and Alter agreements, AFS retained significant business assets. Notably, the AFS assets relating to the profitable metal trading and demilitarization operations were not included in the sale agreements. AFS retained approximately $3 million in inventory, its accounts receivable, its trade name, certain office furniture and equipment, and its corporate goodwill. AFS excluded these items in anticipation of finding suitable property to relocate its retained metal trading and demilitarization operations. These two operations were in fact relocated and continued to operate.

Because AFS was not certain in March 2001, however, that it could relocate successfully before September 25 and thus might subsequently need to liquidate all of its operations, AFS sent out a notice on March 27, 2001, to all shareholders, including appellants, of a special shareholders' meeting to be held on April 13, 2001. As indicated in the notice, the purpose of the meeting was to vote on the approval of the City of Omaha and Alter agreements. The notice also advised the shareholders that AFS "will continue to do business after the consummation of the [City of Omaha and Alter agreements]" but that "a sale of all or substantially all of" the property of AFS under Neb. Rev. Stat. § 21-20,136 (Reissue 1997) of Nebraska's Business Corporation Act could occur. Section 21-20,136 provides, inter alia, that "[a] corporation may sell . . . all, or substantially all, of its property . . . otherwise than in the usual and regular course of business . . . if the board of directors proposes and its shareholders approve the proposed transaction." Thus, the notice advised shareholders of the vote on the City of Omaha and Alter agreements and generally advised the shareholders of the existence of dissenters' rights, which, when properly exercised, would

provide to dissenters the fair value of their AFS shares in the event of a sale of all or substantially all of the property of AFS, which sale would cause AFS to cease its operations.

At the April 13, 2001, special shareholders' meeting, appellants provided written notice pursuant to § 21-20,141 of their intent to dissent from the City of Omaha and Alter agreements. The agreements were approved at the shareholders' meeting, and the sales transactions were finalized.

In July 2001, AFS found a suitable site at 155 Ida Street in Omaha to relocate its business operations. On August 1, AFS sent notice to its shareholders that it would be relocating to a new site and that it would continue to conduct its metal trading and demilitarization operations. In the August 1 notice, AFS informed shareholders that a portion of the proceeds from the City of Omaha and Alter agreements would be distributed to shareholders pursuant to a plan of partial liquidation. According to the August 1 notice, "[e]ach Shareholder, in addition to receiving their [sic] share of the net proceeds of the sale, will continue to retain ownership of all of their [sic] shares in [AFS]."

In late September 2001, AFS completed its purchase of the Ida Street property and moved its business operations to the new location. In March 2002, AFS distributed to appellants their pro rata share of the proceeds from the City of Omaha and Alter agreements, which, after deducting certain taxes and expenses, amounted to $12.83 per share. Appellants accepted these proceeds and retained their stock.

On June 2, 2004, appellants filed their complaint in the instant action, seeking a writ of mandamus directing appellees to comply with Nebraska's dissenters' rights statutes. Appellants claimed that the City of Omaha and Alter agreements constituted a sale of all or substantially all of the property of AFS and that, thus, they were entitled to dissenters' rights under § 21-20,138(1)(c) (dissenters' rights triggered by sale of all or substantially all of corporation's property). Alternatively, appellants claimed that the March 27, 2001, notice to shareholders created dissenters' rights under § 21-20,138(1)(e) (dissenters' rights triggered by provisions in articles of incorporation, bylaws, or resolution). For the sake of completeness, we

note that another lawsuit seeking dissenters' rights, initiated by AFS shareholders other than appellants, was also filed against AFS. The district court's decision in that action is on appeal to this court and is resolved by separate opinion. See *Ferer v. Aaron Ferer & Sons, post* p. 770, 725 N.W.2d 168 (2006).

An evidentiary hearing on appellants' complaint seeking the writ of mandamus in the instant case was held on September 17, 2004. Two witnesses testified live, and the parties stipulated to the district court's receipt of numerous exhibits including those reflecting the financial condition of AFS. In its opinion and order filed April 18, 2005, the court found that the City of Omaha and Alter agreements did not constitute the sale of all or substantially all of the property of AFS under § 21-20,138(1)(c), because the sales did not affect either the metal trading or demilitarization operations that generated the majority of sales for AFS. With regard to appellants' claim for dissenters' rights under § 21-20,138(1)(e), the court found no evidence of any articles of incorporation, bylaws, or the March 27, 2001, notice that created dissenters' rights. The district court denied appellants' request for a writ of mandamus and dismissed appellants' complaint.

Appellants have appealed. We affirm.

## ASSIGNMENT OF ERROR

On appeal, appellants have assigned two errors that we restate as one. Appellants claim, restated, that the district court erred in failing to find that appellants were entitled to dissenters' rights either because the City of Omaha and Alter agreements constituted a sale of all or substantially all of the property of AFS pursuant to § 21-20,138(1)(c) or because the March 27, 2001, notice gave appellants dissenters' rights pursuant to § 21-20,138(1)(e).

## STANDARDS OF REVIEW

The meaning of a statute is a question of law. *Bohaboj v. Rausch, ante* p. 394, 721 N.W.2d 655 (2006). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Crouse v. Pioneer Irr. Dist., ante* p. 276, 719 N.W.2d 722 (2006).

## ANALYSIS

Appellants argue that the City of Omaha and Alter agreements and the March 27, 2001, notice AFS sent to its shareholders triggered dissenters' rights and that they were thus entitled to receive the fair value of their AFS stock. Appellants claim on appeal that the district court erred when it denied appellants a writ of mandamus and dismissed their complaint. In response, appellees assert that appellants had no clear right to the relief they sought in their complaint for mandamus and that, therefore, the district court did not err when it denied the writ and dismissed the complaint. We agree with appellees. Because appellants had no clear right to the relief they sought, the district court did not err in denying the writ of mandamus and dismissing appellants' complaint.

■ Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law. *Crouse v. Pioneer Irr. Dist., supra*; Neb. Rev. Stat. §§ 25-2156 to 25-2169 (Reissue 1995 & Cum. Supp. 2006). In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act. *State ex rel. Musil v. Woodman*, 271 Neb. 692, 716 N.W.2d 32 (2006).

Appellants contend they are entitled to dissenters' rights pursuant to § 21-20,138(1)(c) and (e), which provide as follows:

> (1) A shareholder shall be entitled to dissent from, and obtain payment of the fair value of his or her shares in the event of, any of the following corporate actions:
>
> . . . .
>
> (c) Consummation of a sale or exchange of all, or substantially all, of the property of the corporation other than in the usual and regular course of business if the shareholder is entitled to vote on the sale or exchange [or]

(e) Any corporate action taken pursuant to a shareholder vote to the extent the articles of incorporation, the bylaws, or a resolution of the board of directors provides that voting or nonvoting shareholders are entitled to dissent and obtain payment for their shares.

A dissenting shareholder is defined under § 21-20,137(3) as "a shareholder who is entitled to dissent from corporate action under section 21-20,138 and who exercises that right when and in the manner required by sections 21-20,140 to 21-20,148." Generally, under Nebraska's dissenters' rights statutes, if one of the enumerated corporate actions in § 21-20,138 occurs, a dissenting shareholder is entitled to receive the "fair value" of his or her shares. See § 21-20,138. "Fair value" is defined as "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects." § 21-20,137(4). If the corporation and the dissenter fail to agree on the fair value of the shares, a court proceeding can be filed to obtain a judicial determination as to the fair value of the shares. § 21-20,149.

This court has previously noted the policy behind these provisions of the dissenters' rights statutes. We stated:

"At common law, unanimous shareholder consent was a prerequisite to fundamental changes in the corporation. This made it possible for an arbitrary minority to establish a nuisance value for its shares by refusal to cooperate. To meet the situation, legislatures authorized the making of changes by majority vote. This, however, opened the door to victimization of the minority. To solve the dilemma, statutes permitting a dissenting minority to recover the appraised value of its shares, were widely adopted."

*Rigel Corp. v. Cutchall*, 245 Neb. 118, 125, 511 N.W.2d 519, 523-24 (1994) (quoting *Voeller v. Neilston Co.*, 311 U.S. 531, 61 S. Ct. 376, 85 L. Ed. 322 (1941)). See, also, 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 5906.10 at 338-41 (perm. ed., rev. vol. 2000 & Cum. Supp. 2005) (stating that in order to "afford some relief to dissent[ing shareholders from actions by the majority] in all jurisdictions statutes were enacted . . . that give the dissenters the right to receive the cash value of their stock and [if necessary] provide for an appraisal where no agreement as to value can be

reached. . . . The purpose of these statutes is to protect the property rights of dissenting shareholders from actions by the majority shareholders which alter the character of their investment").

. Appellants claim they are entitled to dissenters' rights under § 21-20,138(1)(c), because the City of Omaha and the Alter agreements constituted "a sale . . . of all, or substantially all" of the property of AFS. In support of their argument, appellants assert that under the agreements, AFS sold 100 percent of its improved and unimproved real estate, together with almost 92 percent of its equipment. Appellees respond that appellants' arguments ignore "the nature and value of the property retained by [AFS] after the consummation of the [City of Omaha and Alter sale agreements]." Brief for appellees at 16.

Resolution of appellants' claim on appeal requires a determination of the meaning of "all, or substantially all" as used in the context of § 21-20,138(1)(c), a question this court has not previously addressed. The dissenters' rights statutes do not define the phrase "all, or substantially all." We note, however, that Nebraska's Business Corporation Act, including the dissenters' rights statutes, is based upon the 1984 version of the Model Business Corporation Act. See, generally, 1995 Neb. Laws, L.B. 109. The official comment 1 to § 12.01 of the Model Business Corporation Act, which is similar to Neb. Rev. Stat. § 21-20,135 (Reissue 1997), has explained the meaning of "all, or substantially all" in connection with a board of directors' ability to conduct the usual and regular course of business without shareholder approval, and we believe that explanation is equally applicable to the phrase "all, or substantially all" in the Nebraska dissenters' rights statutes, § 21-20,138(1)(c). The comment states:

> The phrase "all or substantially all," chosen by the draftsmen of the Model Act, is intended to mean what it literally says, "all or substantially all." The phrase "substantially all" is synonymous with "nearly all" and was added merely to make it clear that the statutory requirements could not be avoided by retention of some minimal or nominal residue of the original assets. A sale of all the corporate assets other than cash or cash equivalents is normally the sale of "all or substantially all" of the corporation's

property. A sale of several distinct manufacturing lines while retaining one or more lines is normally not a sale of "all or substantially all" even though the lines being sold are substantial and include a significant fraction of the corporation's former business. . . . Similarly, a sale of a plant but retention of operating assets (e.g., machinery and equipment), accounts receivable, good will, and the like with a view toward continuing the operation at another location is not a sale of "all or substantially all" the corporation's property.

3 Model Business Corporation Act Ann. § 12.01, official comment at 12-3 (3d ed. 1984 & Supp. 1996).

As anticipated by the foregoing comment, courts have compared retained assets to transferred assets to determine whether "all, or substantially all" of the property of the corporation has been sold. In this regard, it has been stated that "the mere fact that the corporation remained in business under the same name is not the critical criterion. . . . Our focus is upon the relationship between the assets transferred and those remaining." *Waters v. Double L, Inc.*, 114 Idaho 256, 268, 755 P.2d 1294, 1306 (Idaho App. 1987).

With regard to the transfer of corporate assets, the phrase "all, or substantially all" or comparable phrases have been adopted in all 50 states. *Sterman v. Hornbeck*, 156 Wis. 2d 556, 457 N.W.2d 874 (1990). See 6A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 2949.20 (perm. ed., rev. vol. 2005). Case law from other jurisdictions is instructive as to the meaning of "all, or substantially all." It is generally acknowledged that a principle has emerged from the decisions of other courts that "a disposition of corporate assets may be considered 'substantially all' if either its quantitative or qualitative impact, or both, would fundamentally change the nature of the corporation." *Butcher v. Girl Scouts of Tribal Trails*, 779 N.E.2d 946, 949 (Ind. App. 2002). See, also, *Sterman v. Hornbeck*, 156 Wis. 2d at 564-65, 457 N.W.2d at 878 (stating that "[s]everal states have had occasion to interpret the phrase 'substantially all,' and have found it applicable to the sale or transfer of major assets which change the nature of the corporate business or purpose").

In *South End Imp. Group v. Mulliken*, 602 So. 2d 1327, 1332 (Fla. App. 1992), the court reviewed the decisions from a number of jurisdictions and stated:

> Other jurisdictions have considered both quantitative and qualitative factors in determining whether a proposed transaction triggers dissenters' rights. . . .
>
> Shareholder notice and consent requirements . . . and dissenters' rights statutes . . . are intended to [e]nsure that directors do not fundamentally change the nature of the shareholders' investments without the check and balance of informed shareholder approval, and the opportunity for dissenters to withdraw from the corporation.

See, also, *Campbell v. Vose*, 515 F.2d 256 (10th Cir. 1975) (stating that transfer of one-third of assets, which constituted entirety of operating assets, was substantially all because was last step in corporate organization); *Gimbel v. Signal Companies, Inc.*, 316 A.2d 599 (Del. Ch. 1974) (stating that sale is of all or substantially all if it substantially affects existence and purpose of corporation), *affirmed* 316 A.2d 619 (Del.).

■ We agree with the principle recognized in the foregoing quoted material that an examination whether there has been a change in the nature of the underlying corporate business is central to a determination of whether there has been a sale of "all, or substantially all" of the corporation's property. Accordingly, we conclude that the phrase "all, or substantially all," as used in § 21-20,138(1)(c), means a sale of corporate assets that, quantitatively or qualitatively, would result in a fundamental change in the nature of the corporation. See *Sterman v. Hornbeck*, 156 Wis. 2d at 565, 457 N.W.2d at 878 (stating that "[t]he determinative factor is whether the sale changes the nature of the corporate activity").

Applying this standard to the instant case, we determine that the district court did not err when it found that the City of Omaha and the Alter agreements were not a sale of "all, or substantially all" of the property of AFS under § 21-20,138(1)(c). At the time of the sales, AFS was engaged in three distinct lines of business, the scrap metal operation, the metal trading operation, and the demilitarization operation. As a result of the City of Omaha and the Alter agreements, AFS essentially ceased one

line of business, the scrap metal operation, and the two other lines of business remained. The record supports the district court's findings that these two lines had produced approximately 80 percent of AFS' sales and more than 90 percent of its profits for the 9 years leading up to the City of Omaha and Alter agreements, whereas the scrap metal operation had lost money 5 out of those 9 years. The record further supports the district court's finding that notwithstanding the sale of its scrap metal operation, AFS retained significant assets, including two-thirds of its $4.6 million in inventory, its accounts receivable, its trade name, certain office furniture and equipment, and its corporate goodwill.

The City of Omaha and the Alter agreements did not effect a fundamental change in the nature of the business of AFS and did not constitute a sale of "all, or substantially all" of the property of AFS. Accordingly, there is no merit to appellants' claim that they are entitled to dissenters' rights under § 21-20,138(1)(c).

We similarly find no merit to appellants' argument that they were entitled to dissenters' rights under § 21-20,138(1)(e) by virtue of the March 27, 2001, notice to shareholders. Subsection (1)(e) provides that shareholders are entitled to dissenters' rights if such rights have been provided for by the corporation's "articles of incorporation, the bylaws, or by a resolution of the board of directors." In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. *State v. County of Lancaster, ante* p. 376, 721 N.W.2d 644 (2006). Appellants have provided this court with no basis or authority to ignore the plain meaning of § 21-20,138(1)(e). Thus, appellants are entitled to dissenters' rights under § 21-20,138(1)(e), if entitlement is provided for by an article of incorporation, a bylaw, or a resolution. Appellants have not directed this court to any AFS articles of incorporation, bylaws, or resolutions that provide explicitly or implicitly for dissenters' rights, and the March 27, 2001, notice is not the equivalent of the enumerated forms of entitlement. See, generally, Neb. Rev. Stat. § 21-2055 (Reissue 1997) (discussing content requirements for notice of special shareholders' meeting). Accordingly, the district court did not err when it concluded that appellants were not entitled to dissenters' rights under § 21-20,138(1)(e).

In this mandamus action, appellants bear the burden of demonstrating clearly and conclusively that they are entitled to the particular thing they want, dissenters' rights, and that appellees are legally obligated to act. See *State ex rel. Musil v. Woodman*, 271 Neb. 692, 716 N.W.2d 32 (2006). We have reviewed the record in this case. As the district court concluded, appellants have failed to carry their burden of demonstrating that they were entitled to dissenters' rights. Because appellants have not demonstrated that they had a clear right to the relief they sought, we conclude that the district court did not err in denying appellants their requested writ of mandamus and in dismissing appellants' complaint.

## CONCLUSION

Appellants were not entitled to the writ of mandamus ordering appellees to provide them with dissenters' rights. We affirm the order of the district court denying appellants the writ of mandamus and dismissing their complaint.

AFFIRMED.

HEAVICAN, C.J., not participating.