Hyman KATZ, Plaintiff,

v.

Robert B. BREGMAN, John Arghyris, Alexander Grass, L. Eliel Fritz, Alan M. Morrison, Thomas E. Singer, Jonathan Churchill, Lawrence E. Brinn, Serge C. Naggar, Connie A. Cox and Plant Industries, Inc. a Delaware Corporation, Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted April 15, 1981.

Decided April 20, 1981.

William Prickett and Michael J. Hanrahan of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiff.

Jack B. Jacobs and Richard A. Levine of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant Plant Industries, Inc.

MARVEL, Chancellor:

The complaint herein seeks the entry of an order preliminarily enjoining the proposed sale of the Canadian assets of Plant Industries, Inc. to Vulcan Industrial Packaging, Ltd., the plaintiff Hyman Katz allegedly being the owner of approximately 170,000 shares of common stock of the defendant Plant Industries, Inc., on whose behalf he has brought this action, suing not only for his own benefit as a stockholder but for the alleged benefit of all other record owners of common stock of the defendant Plant Industries, Inc. However, it is contended by defendants that Mr. Katz having been a former chief executive officer of Plant Industries, Inc. and allegedly involved in litigation with present management of the corporate defendant is accordingly disqualified to sue derivatively or for a class. Nonetheless, he would appear to be qualified to sue individually as a stockhold-

er of Plant Industries, Inc. for the relief sought. Significantly, at common law, a sale of all or substantially all of the assets of a corporation required the unanimous vote of the stockholders, Folk, The Delaware General Corporation Law, p. 400.

The complaint alleges that during the last six months of 1980 the board of directors of Plant Industries, Inc., under the guidance of the individual defendant Robert B. Bregman, the present chief executive officer of such corporation, embarked on a course of action which resulted in the disposal of several unprofitable subsidiaries of the corporate defendant located in the United States, namely Louisiana Foliage Inc., a horticultural business, Sunaid Food Products, Inc., a Florida packaging business, and Plant Industries (Texas), Inc., a business concerned with the manufacture of woven synthetic cloth. As a result of these sales Plant Industries, Inc. by the end of 1980 had disposed of a significant part of its unprofitable assets.

According to the complaint, Mr. Bregman thereupon proceeded on a course of action designed to dispose of a subsidiary of the corporate defendant known as Plant National (Quebec) Ltd., a business which constitutes Plant Industries, Inc.'s entire business operation in Canada and has allegedly constituted Plant's only income producing facility during the past four years. The professed principal purpose of such proposed sale is to raise needed cash and thus improve Plant's balance sheets. And while interest in purchasing the corporate defendant's Canadian plant was thereafter evinced not only by Vulcan Industrial Packaging, Ltd. but also by Universal Drum Reconditioning Co., which latter corporation originally undertook to match or approximate and recently to top Vulcan's bid, a formal contract was entered into between Plant Industries, Inc. and Vulcan on April 2, 1981 for the purchase and sale of Plant National (Quebec) despite the constantly increasing bids for the same property being made by Universal. One reason advanced by Plant's management for declining to negotiate with Universal is that a firm undertaking having been entered into with Vulcan that the board of directors of Plant may not legally or ethically negotiate with Universal. But see *Thomas v. Kempner*, C.A. 4138, March 22, 1973.

In seeking injunctive relief, as prayed for, plaintiff relies on two principles, one that found in 8 Del.C. § 271 to the effect that a decision of a Delaware corporation to sell "* * * all or substantially all of its property and assets * * *" requires not only the approval of such corporation's board of directors but also a resolution adopted by a majority of the outstanding stockholders of the corporation entitled to vote thereon at a meeting duly called upon at least twenty days' notice.

Support for the other principle relied on by plaintiff for the relief sought, namely an alleged breach of fiduciary duty on the part of the board of directors of Plant Industries, Inc. is allegedly found in such board's studied refusal to consider a potentially higher bid for the assets in question which is being advanced by Universal, *Thomas v. Kempner*, supra.

Turning to the possible application of 8 Del.C. § 271 to the proposed sale of substantial corporate assets of National to Vulcan, it is stated in *Gimbel v. Signal Companies, Inc.*, Del.Ch., 316 A.2d 599 (1974) as follows:

> "If the sale is of assets quantitatively vital to the operation of the corporation and is out of the ordinary and substantially affects the existence and purpose of the corporation then it is beyond the power of the Board of Directors."

According to Plant's 1980 10K form, it appears that at the end of 1980, Plant's Canadian operations represented 51% of Plant's remaining assets. Defendants also concede that National represents 44.9% of Plant's sales' revenues and 52.4% of its pretax net operating income. Furthermore, such report by Plant discloses, in rough figures, that while National made a profit in 1978 of $2,900,000, the profit from the United States businesses in that year was only $770,000. In 1979, the Canadian business profit was $3,500,000 while the loss of the United States businesses was $344,000.

Furthermore, in 1980, while the Canadian business profit was $5,300,000, the corporate loss in the United States was $4,500,000. And while these figures may be somewhat distorted by the allocation of overhead expenses and taxes, they are significant. In any event, defendants concede that "* * * National accounted for 34.9% of Plant's pretax income in 1976, 36.9% in 1977, 42% in 1978, 51% in 1979 and 52.4% in 1980."

While in the case of *Philadelphia National Bank v. B.S.F. Co.*, Del.Ch., 199 A.2d 557 (1969), rev'd on other grounds, Del.Supr., 204 A.2d 746 (1964), the question of whether or not there had been a proposed sale of substantially all corporate assets was tested by provisions of an indenture agreement covering subordinated debentures, the result was the same as if the provisions of 8 Del.C. § 271 had been applicable, the trial Court stating:

"While no pertinent Pennsylvania case is cited, the critical factor in determining the character of a sale of assets is generally considered not the amount of property sold but whether the sale is in fact an unusual transaction or one made in the regular course of business of the seller * * *".

Furthermore, in the case of *Wingate v. Bercut* (C.A. 9) 146 F.2d 725 (1945), in which the Court declined to apply the provisions of 8 Del.C. § 271, it was noted that the transfer of shares of stock there involved, being a dealing in securities, constituted an ordinary business transaction.

In the case at bar, I am first of all satisfied that historically the principal business of Plant Industries, Inc. has not been to buy and sell industrial facilities but rather to manufacture steel drums for use in bulk shipping as well as for the storage of petroleum products, chemicals, food, paint, adhesives and cleaning agents, a business which has been profitably performed by National of Quebec. Furthermore, the proposal, after the sale of National, to embark on the manufacture of plastic drums represents a radical departure from Plant's historically successful line of business, namely steel drums. I therefore conclude that the proposed sale of Plant's Canadian operations, which constitute over 51% of Plant's total assets and in which are generated approximately 45% of Plant's 1980 net sales, would, if consummated, constitute a sale of substantially all of Plant's assets. By way of contrast, the proposed sale of Signal Oil in *Gimbel v. Signal Companies, Inc.*, supra, represented only about 26% of the total assets of Signal Companies, Inc. And while Signal Oil represented 41% of Signal Companies, Inc. total net worth, it generated only about 15% of Signal Companies, Inc. revenue and earnings.

I conclude that because the proposed sale of Plant National (Quebec) Ltd. would, if consummated, constitute a sale of substantially all of the assets of Plant Industries, Inc., as presently constituted, that an injunction should issue preventing the consummation of such sale at least until it has been approved by a majority of the outstanding stockholders of Plant Industries, Inc., entitled to vote at a meeting duly called on at least twenty days' notice. Compare *Robinson v. Pittsburg Oil Refining Company*, Del.Ch., 126 A. 46 (1933).

In light of this conclusion it will be unnecessary to consider whether or not the sale here under attack, as proposed to be made, is for such an inadequate consideration, viewed in light of the competing bid of Universal, as to constitute a breach of trust on the part of the directors of Plant Industries, Inc., *Robinson v. Pittsburg Oil Refining Company*, supra.

Being persuaded for the reasons stated that plaintiff has demonstrated a reasonable probability of ultimate success on final hearing in the absence of stockholder approval of the proposed sale of the corporate assets here in issue to Vulcan, a preliminary injunction against the consummation of such transaction, at least until stockholder approval is obtained, will be granted.

On notice, an appropriate form of order in conformity with the above may be submitted.