■ ROSE OCKO FOUNDATION, INC., Respondent-Appellant, v YECHIEL LEBOVITS et al., Appellants-Respondents, and SIDNEY SCHWARTZ, Respondent-Appellant. ELIOT L. SPITZER, Attorney General of the State of New York, Nonparty Respondent. [686 NYS2d 861] —In an action, *inter alia,* to set aside a conveyance of real property, (1) the defendant Yechiel Lebovits appeals, and the defendants Sheket Properties, Inc., and Moishe Lebo-

vits separately appeal, as limited by their respective briefs, from so much of a judgment of the Supreme Court, Rockland County (Hickman, J.), dated September 18, 1997, as, after a trial, declared the conveyance null and void, (2) the defendant Sidney Schwartz cross-appeals, as limited by his brief, from so much of the same judgment as directed him to reimburse Yechiel Lebovits and Moishe Lebovits for the real estate taxes they paid on the subject property, and (3) the plaintiff cross-appeals, as limited by its brief, from so much of the same judgment as dismissed its cause of action against the defendants Yechiel Lebovits, Sheket Properties, Inc., and Moishe Lebovits for aiding and abetting the defendant Sidney Schwartz in the breach of his fiduciary duty to the plaintiff.

Ordered that the judgment is affirmed insofar as appealed and cross-appealed from, with one bill of costs payable to the plaintiff by the defendants appearing separately and filing separate briefs.

The plaintiff, Rose Ocko Foundation, Inc. (hereinafter the Foundation), was incorporated as a Type B not-for-profit corporation in 1978. The principal purpose of the Foundation was to construct and operate a facility for the care of resident and non-resident elderly Jewish people in Rockland County. All of the Foundation's assets, including approximately 34 acres located in the Town of Ramapo (hereinafter the property), were donated by Harry M. Ocko, who envisioned that the senior citizens center would be built on the property. Although the Town of Ramapo initially approved a zoning change to allow the Foundation to build the facility on the property, the decision was overturned by the Supreme Court in a proceeding brought pursuant to CPLR article 78 by a group of local homeowners. When the Foundation realized that a zoning change was not imminent, it decided to sell the property.

The property was adjacent to a large tract of land owned by two brothers, Yechiel and Moishe Lebovits, who hoped to combine enough contiguous property to incorporate a new village. Although the Foundation received a higher offer, it decided to sell the property to Sheket Properties, Inc. (hereinafter Sheket), a corporation formed by Yechiel Lebovits, for $838,500 because he promised to obtain zoning approval for the senior citizens' center. According to the Foundation, Yechiel Lebovits agreed that if he succeeded in forming the village, the Foundation could buy back seven lots on which to build the facility, and if he failed, the property would revert back to the Foundation.

On November 13, 1984, the Foundation's president executed

the contract of sale, and, on January 7, 1985, she executed the deed transferring the property to Sheket. The Foundation's president allegedly did not know that the contract contained a rider which radically altered the agreement so that the Foundation could only repurchase the property if an arbitrator determined that Sheket did not use its best efforts to incorporate the village and obtain zoning approval. Yechiel Lebovits subsequently transferred the ownership of Sheket to his brother Moishe Lebovits, who deeded the property to himself and dissolved the corporation. Although the Foundation repurchased seven lots, the zoning was never approved, and the village was never formed.

In or about April 1987 the Foundation commenced an action against Yechiel Lebovits and Sheket seeking, among other relief, a declaratory judgment that the contract of sale and the deed were null and void. In essence, the complaint alleged that the transaction was invalid because it violated Not-For-Profit Corporation Law §§ 510 and 511, which require Supreme Court approval for the disposition of all or substantially all of the assets of a not-for-profit corporation. Approximately 7 months later, the Foundation commenced a second action, which was later consolidated with the first, against, among others, its attorney Sidney Schwartz, alleging the breach of a fiduciary duty, malpractice, negligence, and unjust enrichment. The complaint also added a claim against Yechiel Lebovits and Sheket for aiding and abetting Schwartz in the breach of his fiduciary duty to the Foundation. In their answers, Sheket and Yechiel Lebovits asserted cross claims for indemnification against Schwartz. Prior to the trial, the Attorney General of New York State intervened, and the court substituted Moishe Lebovits as a defendant in place of Sheket, the dissolved corporation.

After a six-week trial, the Supreme Court declared that the contract of sale and the deed were null and void *ab initio*. The court also found that Schwartz breached his fiduciary duty to the Foundation when he failed to disclose that his law firm had previously represented the Lebovits brothers in several real estate transactions. In addition, the court held that Schwartz was guilty of malpractice and negligence when, among other misdeeds, he failed to obtain a current appraisal of the property and materially changed the contract without the Foundation's approval. The court directed the Foundation to return the down payment and the purchase money mortgage payments to the Lebovits brothers and directed Sidney Schwartz to reimburse the Lebovits brothers for the real estate taxes they paid from 1985 to 1987.

The Supreme Court properly determined that the sale of the property fell within the ambit of Not-For-Profit Corporation Law §§ 510 and 511, which set forth the procedure for the "sale, lease, exchange or other disposition of all, or substantially all, the assets of a [not-for-profit] corporation". Although the Not-For-Profit Corporation Law does not define what constitutes "all or substantially all" of the assets of a corporation, it is clear that the purpose of the statutes is to protect the beneficiaries of a charitable organization from "loss through unwise bargains and from perversion of the use of the property" (*Church of God of Prospect Plaza v Fourth Church of Christ, Scientist,* 76 AD2d 712, 716, *affd* 54 NY2d 742).

The Supreme Court reviewed the conflicting appraisals and concluded that the property was worth $1,500,000 on the closing date, almost double the purchase price. Although the parties dispute the monetary value of the property in relation to the Foundation's total assets, it was uncontested that the approximately 34 acres were the Foundation's largest, most significant, and single most valuable possession. Moreover, the sale of the property for inadequate consideration severely hampered the Foundation's ability to carry out its charitable mission. Accordingly, the transaction should have been subjected to judicial scrutiny as required by Not-For-Profit Corporation Law §§ 510 and 511. We also note that there was no evidence that the transaction was approved by the Board of Trustees or the members of the Foundation as required by Not-For-Profit Corporation Law § 510 (a).

Contrary to the defendants' contention, the Foundation could not ratify the sale by its subsequent conduct because the members did not have sufficient knowledge of the facts, particularly the rider, which radically changed the material terms of the contract (*see, Holm v C.M.P. Sheet Metal,* 89 AD2d 229).

We reject Moishe Lebovits' contention that he was not properly made a party to this action. The court, finding it necessary to pierce the corporate veil in order to achieve equity, granted the motion by the Foundation to substitute Moishe Lebovits for Sheket in July 1995. A decision to pierce the corporate veil requires a showing that the owners exercised complete domination of the corporation with respect to the transaction attacked and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury (*see, Matter of Morris v New York State Dept. of Taxation & Fin.,* 82 NY2d 135, 141; *Hyland Meat Co. v Tsagarakis,* 202 AD2d 552).

The Lebovits brothers, who negotiated the purchase of the Foundation property on behalf of Sheket, completely dominated the corporation. They used Sheket to further their personal, rather than any corporate, interests. There was a complete lack of any corporate formalities, such as stock certificates, corporate records, or meetings, other than the 1983 certificate of incorporation and the certificate of dissolution filed with the Secretary of State in August 1987 (*see, Austin Powder Co. v McCullough,* 216 AD2d 825). Yechiel Lebovits apparently assigned his interest in Sheket to Moishe Lebovits in 1985. However, the record fails to disclose any consideration for this transfer, and Moishe Lebovits was unable to produce any document regarding the transfer. According to Moishe Lebovits, towards the end of 1985, he and his brother owned property under three different corporate names, and they simply decided that he, Moishe Lebovits, should own Sheket. When Sheket deeded the subject property to Moishe Lebovits in December 1986 he was the president and sole shareholder of Sheket. In fact, the attorney who prepared the deed described it as a "one-party" transaction.

We further find that it would be unjust to permit the Lebovits brothers to use the corporate form to perpetrate a wrong against the Foundation. The Lebovits brothers were aware, at the time of the closing, of a potential problem because Supreme Court approval had not been obtained for the sale of the Foundation's property. The Foundation initially commenced an action against Yechiel Lebovits and Sheket in April 1987 to rescind the deed on that ground. Yechiel Lebovits submitted an answer in July 1987 in which he stated that he was the owner of the subject property by virtue of a conveyance from Sheket, although the property was actually deeded from Sheket to Moishe Lebovits in December 1986. After the action was commenced, Yechiel Lebovits made an offer to the Foundation to pay off the mortgage and forwarded his personal checks for the amount due.

A second action was commenced by the Foundation in November 1987 which named, among others, Yechiel Lebovits, Sheket, and Sidney Schwartz as parties. Sheket's certificate of dissolution was ultimately filed with the Department of State on August 7, 1987. Nevertheless, Sheket submitted an answer in the second action which did not refer to its status as a dissolved corporation and which included a cross claim against the codefendants. Yechiel Lebovits again stated in his answer that he was the owner of the property by virtue of a conveyance from Sheket, and he also interposed a cross claim against

the codefendants. The evidence supports the court's conclusion that it would be unjust under these circumstances to permit Moishe Lebovits to claim that he was not bound by any determination as to the validity of the sale of the Foundation's property to Sheket.

Even if substitution was improper on the theory of piercing the corporate veil, substitution of Moishe Lebovits for Sheket was also permissible under CPLR 1017. Sheket's certificate of dissolution was not filed with the Department of State until August 1987, after the first action was commenced. The first action was not terminated but was consolidated with the second action. CPLR 1017 permits the substitution of the proper party when a corporation is dissolved while an action is pending. Under these circumstances, Moishe Lebovits was the proper party to substitute.

We further find no merit to Moishe Lebovits' contention that the court never exercised jurisdiction over him because he was not personally served with the complaint. A party may waive a personal jurisdiction claim. "When a defendant participates in a lawsuit on the merits, he indicates his intention to submit to the court's jurisdiction over the action" (*Rubino v City of New York,* 145 AD2d 285, 288). It is undisputed that Moishe Lebovits participated in the defense of this lawsuit from its commencement.

The remaining contentions raised on the cross appeals are without merit. O'Brien, J. P., Joy, Friedmann and Goldstein, JJ., concur.