■ USF&G, Respondent, v Diane Maggiore et al., Defendants, Jeanette Trudeau, Appellant, and Hartford Fire Insurance Company, as Subrogee of Real Property Associates, et al., Respondents. [749 NYS2d 555] —In an interpleader action to determine entitlement to the proceeds of an insurance policy, the defendant Jeanette Trudeau appeals, as limited by her brief, from so much of an order of the Supreme Court, Westchester County (Scarpino, J.), entered September 18, 2000, as denied her motion, inter alia, to dismiss all of the claimant insurance companies from the action and, sua sponte, in effect, approved the plaintiff's amended proposed settlement for distribution of the interpleader funds.

Ordered that on the Court's own motion, the notice of appeal from that portion of the order which, sua sponte, in effect, approved the plaintiff's amended proposed settlement for distribution of the interpleader funds is deemed an application for leave to appeal, and leave to appeal from that portion of the order is granted (*see* CPLR 5701 [c]); and it is further,

Ordered that the order is modified by deleting the provision thereof which, sua sponte, in effect, approved the plaintiff's amended proposed settlement for distribution of the interpleader funds; as so modified, the order is affirmed insofar as appealed from, with costs payable to the appellant, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings in accordance herewith.

The plaintiff, USF&G, a subsidiary of the St. Paul Companies (hereinafter USF&G), issued a homeowner's insurance policy with policy limits of $500,000 to Molly Rosenkampff, who lived in a Westchester apartment building. In December 1997 there was a fire in Rosenkampff's apartment. According to the Supreme Court, the fire damaged "virtually all" of the apartments in the building, and claims submitted to USF&G exceeded $12,500,000. USF&G acknowledged that it would have to pay out the full amount of Rosenkampff's policy, and therefore, commenced this interpleader action.

In the summons and complaint, USF&G named as defendants any tenant or property owner who indicated that they would be making a claim for the proceeds of the policy. Also named as defendants were nine insurance companies (including USF&G) which had issued policies to various tenants and/or businesses. Not all of the insurers filed answers to the

complaint. Subsequently, "the Court directed [USF&G] to serve several notices of this proceeding by mail and publication," resulting in several other claimants, including several more insurers claiming subrogation rights, to come forward and make a claim. Although USF&G never amended the summons and complaint to name these additional claimants as parties to the action, and none of the additional insurers ever moved for leave to intervene in the action, the Supreme Court permitted certain insurance companies, including some that had not filed an answer and others which had not been named in the complaint, to participate in the action and assert claims against the interpleader funds.

Thereafter, USF&G, as directed by the court, formulated a plan for the distribution of the funds. USF&G's plan divided the claimants into two groups: (1) the "subrogation claims," consisting of 13 different insurers (including USF&G) which were to receive a total of $271,500 of the interpleader funds, and (2) the "unreimbursed claims," consisting of over 50 individuals and companies, who were to receive the remaining $228,500. The Supreme Court ultimately approved this plan, over the opposition of the appellant, Jeanette Trudeau, among others.

Trudeau contends that the Supreme Court should not have allowed the insurers which were named in the summons and complaint, but failed to serve an answer, and the insurers which were not named in the summons and complaint, and never moved for leave to intervene, to participate in the action. We disagree.

Commencement of an interpleader action is provided for by CPLR 1006. A stakeholder may commence an interpleader action against two or more claimants (*see* CPLR 1006 [a]), and a "defendant stakeholder may bring in a claimant who is not a party by filing a summons and interpleader complaint" (CPLR 1006 [b]). However, CPLR 1006 contains few special provisions regarding pleadings or the appearance of a defendant in an interpleader action (*see* 82 NY Jur 2d, Parties § 71). Thus, a defendant in an interpleader action must follow the general rules for appearing in an action applicable to any defendant (*see* CPLR 320).

CPLR 320 (a) provides that a defendant may appear in an action in one of three ways: (1) by serving an answer, (2) by serving a notice of appearance, or (3) making a motion which has the effect of extending the time to answer. Courts, however, have also recognized that a "person who participates in the merits of an action appears informally and confers jurisdiction

on the court" (*Matter of Roslyn B. v Alfred G.,* 222 AD2d 581, 582 [citations omitted] [appellant conferred jurisdiction on Family Court when he submitted to a blood grouping test and asserted denials of his paternity through his attorney without raising jurisdictional objection]; *see* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C320:4, at 284 ["A defendant whose participation in an action reaches a certain level of activity will be held to have appeared informally even though the defendant has not interposed any of the three responses in CPLR 320 (a)," and "[a]n informal appearance can prevent a finding that the defendant is in default"]; *Rose Ocko Found. v Lebovits,* 259 AD2d 685, 690; *Feola v McCormack Lines,* 173 AD2d 256; *Matter of Rosso v Rosso,* 171 AD2d 797; *Rubino v City of New York,* 145 AD2d 285). Here, the insurance companies which were named in the interpleader complaint, but failed to serve an answer, appeared informally by making a late claim. Thus, the Supreme Court properly allowed them to participate in the action, especially since no party ever obtained a default judgment against them within one year of their default (*cf.* CPLR 3215 [a], [c]).

While we do not approve of the Supreme Court's failure to require USF&G to serve an amended summons and complaint naming the additional insurers which later made a claim, or to require such insurers to move for leave to intervene in the action, we conclude that these insurers' claims were also properly considered by the court. By seeking affirmative relief from the court, these parties submitted to its jurisdiction (*see Adam v Saenger,* 303 US 59, 67-68 [plaintiff, by his voluntary act in demanding justice from the defendant, "submitted himself to the jurisdiction of the Court"]; *Coutts Bank [Switzerland] v Anatian,* 275 AD2d 609, 612-613 [concurring op by Sullivan, P.J.]).

Next, Trudeau argues that the insurers should not be allowed to assert their subrogation rights, and receive part of the interpleader funds, until all of the individual policyholders have been made whole. We note that although the insurance companies claim that they are asserting contractual, rather than equitable, subrogation rights, the record on appeal contains only one insurance policy. That policy was submitted by the respondent Hartford Fire Insurance Company, as subrogee of Real Property Associates (hereinafter Hartford), which was the excess insurer for the defendant Real Property Associates. Insofar as is relevant to this issue, Hartford's policy provided that it "shall be subrogated to all the Insured's rights of recovery against any person or organization as stated in the

Underlying Insurance policy scheduled in Paragraph 4 of this policy." However, the underlying policy is not contained in the record on appeal. Thus, we must determine this issue by reference to equitable subrogation principles (*see Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577, 581 n).

Under the common law of subrogation, an insurer has the right "to 'stand in the shoes' of the insured and seek recompense from the third-party tortfeasor for the amount paid to the insured, *provided that the insured has been made whole*" (*ELRAC, Inc. v Ward,* 96 NY2d 58, 75-76 [emphasis added]; *see Winkelmann v Excelsior Ins. Co., supra* at 581; *Berry v St. Peter's Hosp. of City of Albany,* 250 AD2d 63, 68; 16 Couch, Insurance 3d § 223:134, at 223-147—223-149). "The equitable principle underlying the made whole rule is that the burden of loss should rest on the party paid to assume the risk, and not on an inadequately compensated insured, who is the least able to shoulder the loss. To do otherwise would mean that the insured loses money and the insurer gains by such a financial arrangement, which is contrary to the principal purpose of an insurance contract: to protect an insured from loss, thereby placing the risk of loss on the insurer, and the insurer has accepted payments from the insured to assume this risk of loss" (16 Couch, Insurance 3d § 223:136, at 223-152—223-153).

We reject Trudeau's contention that the insurers are not entitled to receive any of the interpleader funds until after each and every individual policyholder has been made whole. However, we conclude that, under the facts of this case, before each insurance company asserting a subrogation claim may receive a portion of the interpleader funds, it must establish only that its individual insured has been made whole. The record on appeal is insufficient to determine whether the insureds of any of the insurance companies which have made claims in the instant case have been made whole. Therefore, the matter must be remitted to the Supreme Court for such determination and for further proceedings with respect to distribution of the interpleader funds. Ritter, J.P., Feuerstein, Friedmann and Crane, JJ., concur.