Sheila BUTCHER, Maureen Powell, Janie Prather, and Kelly Cummings, Appellants–Plaintiffs,

v.

GIRL SCOUTS OF TRIBAL TRAILS COUNCIL, INC., Appellee–Defendant.

No. 09A05–0203–CV–138.

Court of Appeals of Indiana.

Dec. 11, 2002.

Rosemary Higgins Burke, Burke Lee and Heller, Rochester, IN, Attorney for Appellants.

Judy L. Woods, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

■ Sheila Butcher, Maureen Powell, Janie Prather and Kelly Cummings (collectively, "Butcher") appeal a grant of summary judgment for Girl Scouts of Tribal Trails Council, Inc. ("the Council") after Butcher sought an injunction to prevent the Council from selling a Girl Scout camp it owns. She asserts on appeal that the trial court improperly determined the camp did not represent "all or substantially all" of the Council's assets. The Council asserts Butcher lacks standing to bring this action[1] and that it is entitled to attorney fees and costs.

We affirm.

## FACTS

The Council owns a 140–acre parcel in Wabash County known as Camp Kokiwanee ("the camp"). The camp has not been used since 1996 and the Council has received offers from private investors to buy the camp for prices ranging from $300,000 to $500,000. The Council spends some $6,000 per year to maintain the camp and pay for utilities, maintenance, and insurance. The trial court determined the camp has no useful value to the Council. The Council has, in addition to the camp property, cash and investments worth approximately $800,000. It also owns properties known as the Wildwood Program Center and the Little House, which have a combined value of about $320,000.

In 1988, the Council directors resolved to incorporate as a not-for-profit corporation. The voting members approved the resolution and the Council was certified as a not-for-profit corporation under Indiana law. The Council bylaws indicate the Council holds title to and ownership of all property with the exception of troop equipment. Butcher directs us to no bylaw provisions that limit the Council's authority to dispose of the property it holds.

In April of 2001, ten of the fourteen directors of the Council conducted a special meeting where they voted to sell the camp. Butcher brought an action to enjoin the sale, asserting the Council had not first obtained approval of the members of the corporation, which approval Butcher

---

1. The Council asserts the original plaintiffs, Butcher, Powell, and Prather, lacked standing to seek an injunction because such a proceeding "may be brought by the attorney general or a director." Ind.Code § 23–17–4–4(b). None of the original plaintiffs are directors, but the trial court permitted Butcher to join Cummings, one of the directors, as an additional plaintiff. The Council offers no argument that the trial court's action was improper or that Cummings does not have standing.

We therefore decline to find Butcher lacks standing to bring this action.

We further decline the Council's invitation to hold that Butcher is not a "real party in interest" (Br. of Appellee Girl Scouts of Tribal Trails Council, Inc. ("Council Br.") at 20). A director of a nonprofit corporation is explicitly authorized by statute to bring an action to enjoin a corporate act. Ind.Code § 23–17–4–4(b).

asserted was required by Indiana law. The Council moved for summary judgment, which was granted.[2]

## DISCUSSION AND DECISION

### *Standard of Review*

This court stands in the shoes of the trial court when it reviews the grant or denial of a summary judgment motion. *Mortgage Credit Services, Inc. v. Equifax Credit Information Services, Inc.*, 766 N.E.2d 810, 812 (Ind.Ct.App.2002). When the designated materials show that there is no genuine factual issue and that the movant is entitled to judgment as a matter of law, the grant of a summary judgment motion will be affirmed. *Id.* We construe the evidence in the nonmovant's favor, resolving doubts about the existence of a genuine factual issue against the motion's proponent. *Id.* A grant of summary judgment may be affirmed on any theory that the designated materials support. *Id.* The dispute before us involves the construction of the statutory phrase "all, or substantially all, of the corporation's property." Because the interpretation of a statute is a question of law reserved for the courts, conflicting factual testimony does not necessarily give rise to an issue of fact that would preclude summary judgment. *Sweet v. Art Pape Transfer, Inc.*, 721 N.E.2d 311, 313 (Ind.Ct.App.1999), *trans. dismissed,* 735 N.E.2d 232 (Ind.2000).

### *Requirement of Member Authorization*

Butcher contends the sale of the camp violated the Indiana Nonprofit Corporation Act because the sale was not authorized by the Council members. We find such authorization was not required because the camp does not represent all or substantially all of the Council's property. We therefore affirm the grant of summary judgment for the Council.

Ind.Code § 23–17–20–2 provides in relevant part that

A [nonprofit] corporation may sell, lease, exchange, or otherwise dispose of all, or substantially all, of the corporation's property ... if the proposed transaction is authorized ...

(1) By the board of directors.

(2) By the members by a majority of the votes cast.

(3) In writing by a person whose approval is required by articles of incorporation authorized under IC 23–17–17–1 for an amendment to the articles of incorporation or bylaws.

Neither our legislature nor our courts have defined the phrase "all or substantially all" as used in this section of the Act. However, this question was addressed recently in *Rose Ocko Found., Inc. v. Lebovits,* 259 A.D.2d 685, 686 N.Y.S.2d 861 (N.Y.App.Div.1999). There, a complaint to set aside a sale of property alleged that the transaction was invalid because it violated a statute that required court approval for the disposition of all or substantially all of the assets of a not-for-profit corporation. The principal purpose of the nonprofit corporation was to construct and operate a facility for the care of the elderly. The donor of all the Foundation's assets, which assets included a parcel of approximately 34 acres, envisioned that a senior citizens' center would be built on the property. The Foundation sold the property when it determined a necessary zoning change was not imminent. It later brought the action to set aside the sale.

The New York Not–For–Profit Corporation Law, like ours, does not define what

---

**2.** On September 6, 2002, Butcher moved for an emergency stay of the sale of the property at an auction scheduled for September 10.

We granted the stay pending our disposition of this cause and remanded to the trial court for determination of an appropriate bond.

constitutes "all or substantially all" of the assets of a corporation. The *Rose Ocko* court noted that the purpose of the statute was to protect the beneficiaries of a charitable organization from loss through "unwise bargains and from perversion of the use of the property." *Id.* at 864 (citation omitted). The 34 acre parcel represented the Foundation's largest, most significant, and single most valuable possession. The court also noted the property was sold for inadequate consideration, which severely hampered the Foundation's ability to carry out its charitable mission. Accordingly, it determined the transaction should have been subjected to judicial scrutiny as required by the New York statute.

The same phrase in statutes governing for-profit corporations has been construed by decisions in other jurisdictions and from them has emerged a generally accepted principle that a disposition of corporate assets may be considered "substantially all" if either its quantitative or qualitative impact, or both, would fundamentally change the nature of the corporation. *See, e.g., South End Improvement Group, Inc. v. Mulliken*, 602 So.2d 1327 (Fla.Dist.Ct.App.1992). That court reviewed a number of decisions addressing an issue analogous to that before us:

> Other jurisdictions have considered both quantitative and qualitative factors in determining whether a proposed transaction triggers dissenters' rights. See, e.g., *Gimbel v. Signal Co.*, 316 A.2d 599, 606 (Del.Ch.1974), aff'd, 316 A.2d 619 (Del.1974); *Campbell v. Vose*, 515 F.2d 256, 259 (10th Cir.1975) (transfer of 33% of assets (all operating assets) was substantially all because transfer was last step in corporate reorganization); *In re Multiponics, Inc.*, 453 F.2d 853, 854 (5th Cir.1972) (lease of 91% of acreage owned by corporation was substantially all); *Katz v. Bregman*, 431 A.2d 1274 (Del.Ch.1981) (plant constituting over 51% of corporation's assets and generating 45% of sales was 'substantially all' of its assets); *Stiles v. Aluminum Products Co.*, 338 Ill.App. 48, 86 N.E.2d 887, 888 (1949) (sale of 64% of assets was substantially all); *Prince George's Country Club, Inc. v. Edward R. Carr, Inc.*, 235 Md. 591, 202 A.2d 354, 359 (1964) (sale of assets, including land, valued at $1.13 million and a retention of assets worth $20,000 was sale of 'substantially all' of assets).

> Shareholder notice and consent requirements such as those contained in [the Florida Code] are intended to insure that directors do not fundamentally change the nature of the shareholders' investments without the check and balance of informed shareholder approval, and the opportunity for dissenters to withdraw from the corporation.

*Id.* at 1332. The *Mulliken* court determined a transfer of South End's land would be a fundamental change in the corporation because of the grossly disproportionate value of the land in comparison to the remaining waterworks. The court also noted that the transfer could seriously jeopardize South End's business. *Id.*

In *Schwadel v. Uchitel*, 455 So.2d 401, 403 (Fla.Dist.Ct.App.1984), the corporation sold the sole asset of its wholly owned subsidiary and the last of several restaurants owned by the parent corporation. The fundamental purpose in operating the corporate enterprise was to engage in the restaurant business. Thus, the sale of the last restaurant represented a sale of "substantially all" the corporate assets and was subject to the statutory rights and protections extended to stockholders under Florida's "shareholder consent" provisions governing such transactions.

The *Schwadel* court noted that the purpose of a shareholder consent provision is

"to protect the shareholders from fundamental change, or more specifically to protect the shareholders from the destruction of the means to accomplish the purposes or objects for which the corporation was incorporated and actually performs." *Id., quoting* 6A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 2949.2 (1981 & Supp.1983).

In *Thorpe v. CERBCO, Inc.*, 676 A.2d 436, 444 (Del.1996), *reh'g denied*, the court noted that the need for shareholder· approval is to be measured not by the size of a sale alone, but also by its qualitative effect upon the corporation. Thus, it is relevant to ask whether a transaction is out of the ordinary and substantially affects the existence and purpose of the corporation. There, a sale of stock the corporation owned would have constituted "a radical transformation of CERBCO. In addition, CERBCO's East stock accounted for 68% of CERBCO's assets in 1990 and this stock was its primary income generating asset." *Id.* The stock therefore constituted "substantially all" of CERBCO's assets. *Id.*

■ The camp does not represent "substantially all" of the Council's assets under the *Rose Ocko* standard applicable to non-profit corporations nor under the analogous qualitative or quantitative standards articulated in the decisions involving for-profit corporations. The parties do not dispute that the value of the camp is between $300,000 and $500,000. The value of the Council's other assets is between $1,100,000 and $1,200,000. The camp, unlike the *Rose Ocko* parcel, does not represent the Council's largest, most significant, and single most valuable possession. Nor would its sale, unlike that in *Rose Ocko,* "severely hamper" the Council's ability to carry out its mission. We accordingly decline to hold that a property that has not been used for some six years and that

represents, at most, one-third of a non-profit corporation's assets is "substantially all" of that corporation's property under the *Rose Ocko* standard.

Nor would the sale of the camp "fundamentally change the nature of the corporation," *Mulliken,* 602 So.2d at 1332, or "substantially affect the existence and purpose of the corporation," *CERBCO,* 676 A.2d at 444. The property has not been used as a camp since 1996. The trial court found that it "has no useful value to the Tribal Trails Council." (Appellant's App. at 6.) It costs the Council some $6,000 per year to provide maintenance, insurance, utilities, and related items for the camp. The trial court did not err to the extent it determined the camp did not represent substantially all of the Council's assets.

### Attorney Fees

■ The Council seeks appellate attorney fees pursuant to Ind.Code § 34–52–1–1, which allows a court to award attorney fees when a party brings or prosecutes a "frivolous, unreasonable, or groundless" lawsuit, and under Ind. Appellate Rule 66(E), which permits an award of damages, including attorney fees, when an appeal is frivolous or in bad faith. We have developed guidelines for addressing frivolous or unreasonable claims:

A claim is frivolous when it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. In determining whether a claim· is unreasonable, this court looks to the totality of the circumstances, including the law and facts ascertainable at the time of filing. If after this inquiry the court finds no reasonable attorney

would consider the claim worthy of litigation, the claim is unreasonable.

*Eichenberger v. Eichenberger,* 743 N.E.2d 370, 376 (Ind.Ct.App.2001) (citations and internal quotations omitted).

■ While we ultimately reject Butcher's claims, we cannot say that Butcher's attorney was unable to make a good faith and rational argument on the merits. Nor can we say that no reasonable attorney would consider Butcher's claim worthy of litigation. Butcher correctly noted that hers was a question of first impression in Indiana, and we adopt her premise that the question whether an asset represents "all or substantially all" of a corporation's property requires consideration of qualitative as well as quantitative factors.[3]

The legal process must invite, not inhibit, the presentation of new and creative argument to enable the law to grow and evolve. Application of the statutory authorization for recovery of attorney fees must leave breathing room for zealous advocacy and access to the courts to vindicate rights. Courts must be sensitive to these considerations and view with suspicion allegations of "frivolous, unreasonable, or groundless" claims or defenses. *Mitchell v. Mitchell,* 695 N.E.2d 920, 925 (Ind.1998). We accordingly decline to award attorney fees to the Council.

## CONCLUSION

The Council was not obliged to seek authorization by a majority of its members before selling the camp, as the camp does not represent "substantially all" of the Council's property. We affirm the sum-

mary judgment for the Council but deny its request for attorney fees.

RILEY and ROBB, JJ., concur.

---

**3.** The Council asserts Butcher was not authorized to bring her claim because "Even after joining [the director], they had no standing to proceed." (Council Br. at 22.) Because the Council offers no cogent argument in support of this bald assertion, we decline to take it into account in determining whether attorney fees are appropriate. See App. R. 46(A)(8), 46(B).