GEORGE TANOA, HANS L. WEBSTER, TIAPULA IMO
MAMEA, HELGA LEFITI, TAFAFA SIATAGA, SAUMOLIA
FUGA TALOSIA SOLIPO, ELIZABETH TUALA-
TAMAALELAGAI, for themselves and as shareholders
of ASDC similarly situated, Plaintiffs,

v.

TOM DRABBLE individually and as owner of Dateline Industries,
Inc., TOGIOLA TULAFONO individually and as Governor of
American Samoa, BOARD OF DIRECTORS OF ASDC, SESE
McMOORE individually and as Chairperson of the Board of
Directors of ASDC and Director of ASDC, BOARD OF
DIRECTORS OF DEVELOPMENT BANK OF AMERICAN
SAMOA (DBAS), TANIELU LIUFAU individually and as
Chairperson of the Board of Directors of DBAS, UTU ABE MALAE
individually and as President of DBAS, Defendants.

High Court of American Samoa
Trial Division

CA No. 89-04

October 20, 2004

Before RICHMOND, Associate Justice, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Plaintiffs, Robert K. Maez
        For Defendant Tom Drabble, Jennifer L. Joneson
        For Defendant Togiola Tulafono, Henry Kappel
        For Defendants Board of Directors of ASDC and Sese
        McMoore, Fiti A. Sunia, Attorney General
        For Defendants Board of Directors of DBAS, Tanielu Liufau,
        and Utu Abe Malae, Fainu`ulelei L.F. Ala`ilima-Utu

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION, AND DEFERRING DECISION ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

This dispute arises out of an agreement to sublease a portion of the infamous and deteriorating Rainmaker Hotel. Defendant American Samoa Development Corporation ("ASDC"), the current lessee of the hotel, agreed to sublease approximately 1.77 acres of the 6.81 acre hotel site to Dateline Industries Inc. ("Dateline"), which proposed to redevelop that portion of the premises. Defendant Governor Togiola Tulafono ("the Governor") approved the sublease and Dateline was prepared to begin renovations.

However, on September 20, 2004, before renovations got underway, Plaintiffs ASDC shareholders ("the shareholders") filed this action for injunctive relief to stop the Dateline program. The shareholders alleged their concern that if Dateline began to renovate the premises, permanent injury would be caused to ASDC's only asset, the Rainmaker Hotel. The shareholders asked the court to issue a preliminary injunction, which would halt all demolition or renovation of Dateline's portion of the hotel, until issues surrounding the sublease could be resolved on the merits. The shareholders named as Defendants are: Tom Drabble ("Drabble"), individually and as owner of Dateline; the Governor, individually and in his official capacity; the ASDC Board; Sese McMoore, individually and as Chairperson of the ASDC Board; the Board of Directors of the Development Bank of American Samoa ("the DBAS Board"); Tanielu Liufau ("Liufau"), individually and as Chairperson of the DBAS Board; and Utu Abe Malae ("Utu"), individually and as President of DBAS.

On October 7, 2004, the Court heard the preliminary injunction application. At the outset of the hearing, upon the shareholders' oral motion, we dismissed the DBAS Board, Liufau and Utu from the case. The remaining Defendants disputed the attempt to procure an injunction. Towards the end of the hearing, they and the shareholders orally moved

for final disposition of the action by summary judgment. For the reasons stated below, we place a preliminary injunction upon the renovation of the Rainmaker Hotel until the sublease in question is presented to and acted upon at an ASDC shareholders' meeting convened for that purpose. We will defer the decision on the summary judgment motions until after the ASDC shareholders act on the sublease.

## Discussion

■ A court may issue a preliminary injunction if the applicant establishes "sufficient grounds" showing that:

> (1) there is a substantial likelihood that the applicant will prevail at trial on the merits and that a permanent injunction will be issued against the opposing party; and
> (2) great or irreparable injury will result to the applicant before a full and final trial can fairly be held on whether a permanent injunction should issue.

A.S.C.A. § 43.1301(j).

During the October 7 hearing, the shareholders based their preliminary injunction claim on three distinct grounds. First, they assert that the sublease is invalid because the original lease, on which the sublease is based, is itself invalid. They claim that the original lease is invalid because the Legislature of American Samoa never formally approved the lease, as is required by law. Second, they assert that the sublease is invalid because the Legislature has likewise not formally approved it. Lastly, they maintain that the sublease is invalid because the ASDC Board did not convene an ASDC shareholders meeting to consider and obtain their approval of the sublease.

## I. Approval of the Original Lease by the Legislature

■ Any lease having a term of 10 or more years and involving real property controlled by the American Samoa Government ("ASG"), in order to become effective, must be submitted to the Legislature, and not disapproved within 30 days of its submission. A.S.C.A § 37.2030.

The shareholders maintain that the Dateline sublease is invalid because it is founded upon an invalid original lease. They contend that the original Rainmaker Hotel lease, between ASG, as lessor, and the ASDC, as lessee, is invalid under A.S.C.A. § 37.2030 because the Legislature affirmatively disapproved it. The shareholders' contention is incorrect. The original lease was presented to the Legislature for disapproval twice. The first time the Legislature rejected the lease. The Legislature stood

107

inactive on the second submission, resulting in a default approval of that transaction.

On June 14, 1996, the Legislature adopted the resolution S.C.R. No. 24-32, expressly rejecting the original lease. On July 12, 1996, the lease was again presented to the Legislature. This time, the resolution S.C.R. No. 24-35, proposing the rejection of the lease, was not passed. Thus, the Legislature did not disapprove the lease within 30 days of its submission and the lease was validated. *See* Session Laws and Digest, Vol. 24-4 (October 1996) (documenting that there is no record of the Fono adopting S.C.R. 24-35 and rejecting the lease).

Because the original lease is legal and valid, there is no substantial likelihood that the shareholders would prevail at trial on this issue. Therefore, their application for a preliminary injunction, to the extent that it relies on this issue, is denied.

## II. Approval of the Sublease by the Legislature

The shareholders further contend that the Dateline sublease is invalid because it was not submitted to the Legislature for approval under A.S.C.A. § 37.2030. They assert that because the sublease term is for 10 or more years and involves ASG land, section 37.2030 applies. The remaining Defendants, however, maintain that the Legislature impliedly approved subleases and assignments of the original lease when it approved the original Rainmaker Hotel lease, which contained a provision authorizing subleases or assignments.

Whether the Legislature impliedly approved subleases and assignments of the original lease containing a provision authorizing such future transactions is perhaps debatable. Presumably, however, the Legislature was cognizant of the sublease-assignment provision when it considered the original lease. Arguably, by its own precise terms, A.S.C.A. § 37.3020 is inapplicable to subleases and assignments. After all, a sublease or assignment cannot extend a lease beyond the period the Legislature has already authorized. On the other hand, the Legislature may not favorably view a significant change in the scope of activities under a sublease or assignment without at least reconsidering the subsequent transaction. Of course, no change in the use of the premises is contemplated in this instance and is probably unlikely in the normal course of such transactions.

We hold, in any event, there is not a substantial likelihood that the shareholders will prevail at trial on this issue for purposes of issuing a preliminary injunction. Therefore, their application for a preliminary injunction, to the extent it relies on this issue, is also denied. We will,

however, further consider the legal aspects of this issue, when and if we decide the pending summary judgment motions.

## III. Shareholder Approval of the Sublease

The shareholders are upset that the ASDC Board did not consult with them before agreeing to the sublease of a portion of the Rainmaker Hotel premises to Dateline. They contend that because the subleased portion of the property is such an important and valuable asset to the corporation, the ASDC Board needed to gain shareholder approval before the transaction could be finalized. The remaining Defendants argue that the ASDC articles of incorporation and bylaws provide that the ASDC Board has discretion as to how and when corporate property may be leased and does not need shareholder approval before such a transaction can be finalized.

■ According to almost all state corporations law, a board of directors is generally free to sell or lease corporate property without shareholder approval. However, a corporation's board of directors must gain such approval if a sale or lease transaction involves "all or substantially all" of the corporation's property or assets, regardless of what the corporation's bylaws or articles of incorporation provide. *See e.g.*, DEL. CODE. ANN. tit. 8, § 271; CAL. CORP. CODE § 1001(a); N.Y. BUS. CORP. LAW § 909(a) (McKinney 2004).

■ When determining whether a lease or sale is of "all or substantially all" of a corporation's assets, a court should avoid a strict mathematical calculation, and instead take a more subjective approach. *See Gimbel v. Signal Companies Inc.*, 316 A.2d 599, 606 (Del.Ch. 1974). In taking such an approach, courts have broken the analysis into two parts: one qualitative and one quantitative. "The qualitative . . . factor asks the court to consider whether the sale 'substantially affects the existence and purpose of the' [corporation]. . . . The quantitative . . . factor involves a determination of whether the sale involved assets 'quantitatively vital to the operation of the [corporation].'" *In re Nantucket Island Ass'n Ltd. P'ship Unitholders Litig.*, 810 A.2d 351, 371 (Del. Ch. 2002) (citing *Gimbel*, 316 A.2d at 616).

■ The qualitative factor focuses on the nature of the asset being sold or leased and its relative importance to the corporation. If the asset is "at the heart of the corporate existence and purpose," such that selling or leasing it involves the "destruction of the means to accomplish the purposes or objects for which the corporation was incorporated and actually performs," then the transaction is more likely one involving "all or substantially all" of the corporate assets. *See Gimbel*, 316 A.2d at 616. In *Katz v. Bregman,* the court indicated that a critical factor was whether the sale or lease was "an unusual transaction" or whether it is

"'one made in the regular course of business . . . .'" 431 A.2d 1274, 1276 (Del. Ch. 1981) (citing *Wingate v. Bercut*, 146 F.2d 725 (9th Cir. 1945)).

■ The second factor focuses on the quantitative value of the asset being sold or leased, relative to the remaining assets of the corporation. If the corporation sells or leases an asset that brings in a clear majority of the corporation's revenue, or is a significant percentage of the corporation's net worth, then the transaction is more likely one involving "all or substantially all" of the corporation's property. Additionally, important to the analysis is whether the remaining assets are "quantitatively vital economic asset[s]." *Hollinger Inc. v. Hollinger Int'l Inc.*, 2004 WL 1728003 at *34. However, "there is no necessary qualifying percentage" and "each inquiry is factual in nature." *In re General Motors Class C Shareholders Litigation*, 734 A.2d 611, 623 (Del. Ch. 1999).

We are mindful that the American Samoa corporation statutes do not contain the provisions applicable to proposed sales or leases of "all or substantially all" of a corporation's assets similar to those commonly found in other U.S. jurisdictions. The Legislature may well consider enacting legislation applicable to such situations. Until then, however, we are not reluctant to fashion local common or case law on the subject to fill the void. *See Interocean v. Samoa Gases*, 29 A.S.R.2d 198, (Trial Division 1996) (citing A.S.C.A. § 1.0201 on the general application of common law in American Samoa and the persuasive assistance of the laws of other jurisdictions in appropriate circumstances).

A. Qualitative Factor

The qualitative aspects of the sublease transaction strongly favor a shareholder vote. The ASDC subleased to Dateline a large section of beachfront property at the Rainmaker Hotel premises. The Rainmaker Hotel is the ASDC's only asset, and the beachfront area of the hotel is likely the most valuable and potentially profitable portion of the hotel grounds. Dateline's planned renovation includes two buildings that stretch along the entirety of the hotel's sandy beach. The value of that section of the hotel becomes even more apparent when it is juxtaposed against the harbor-side wing and its proximity to the port's fuel dock and container yard, and a private commercial fish net repair facility, and the requisite appearance, smells and sounds that accompany those lines of business.

In addition, the remaining portions of the hotel may become obsolete after Dateline completes its renovation. The old pool may be supplanted by Dateline's new pool. The old restaurant area may be displaced by Dateline's proposed new restaurant. The old shops may have market

share taken away by Dateline's new shops. This is not to say that these negative effects are certain to take place; in fact, some testimony tended to show that Dateline's development may actually cause significant increases to the value of the remaining portion of the hotel. However, regardless of whether the project increases or decreases the value of the hotel as a whole, the point is that the sublease is a major event in the history of the Rainmaker Hotel because it involves the ASDC's most valuable asset, is not in the ordinary course of business, and would likely have a significant impact on the remaining hotel premises. In sum, the qualitative aspects of the sublease heavily favor shareholder consultation and action on the transaction.

B. Quantitative Factor

Although the sublease affects only about 25% of the hotel property, the quantitative attributes of the sublease also favor the need for shareholder approval. First, the beach-side portion of the hotel is very likely the most valuable and potentially profitable portion the ASDC's only asset. By relinquishing control over such an asset, the ASDC Board committed the ASDC to a transaction that will have large quantitative ramifications upon the corporation. Second, the remaining portion of the hotel premises will need significant capital improvements before it is able to compete with the new development. The direction and extent of Dateline's improvements to the subleased portion of the hotel premises will likely set a standard by which the direction and extent of the any future improvements to the remaining portion of the premises will be measured. Extensive remodeling and redesigning of the beach-front wing may make any modest improvements to the harbor-side wing much less valuable. Therefore, because the sublease authorizing a refurbishment of Dateline's portion of the hotel may have such quantitative ramifications to the corporation's remaining assets, further need for shareholder involvement in approval of the transaction becomes clear.

In sum, the ASDC is subleasing a portion of its most valuable asset, and a refurbishment of that asset may significantly alter the value of the remaining portion of that asset or improvements upon that asset. Therefore, a quantitative analysis of the sublease also favors shareholder approval.

■ After an analysis of both the qualitative and quantitative aspects of the Dateline sublease, we conclude that the transaction involves "all or substantially all" of the corporation's property.

111

## Conclusion

■ We hold, as demonstrated above, that the shareholders have demonstrated that there is a substantial likelihood that they would prevail at trial on the issue of a shareholder vote. We additionally hold that great or irreparable injury would result before a trial could be held. This is so because the execution of the lease and commencement of the renovations would irreplaceably alter the hotel premises from its current state, without a legally necessary shareholder approval.

Therefore, we are issuing a preliminary injunction preventing Dateline's planned repairs and renovations of the subleased portion of the Rainmaker Hotel. However, the preliminary injunction will be lifted after the ASDC holds a shareholder meeting to consider and the ASDC shareholders approve the sublease. Section 2(b) of the ASDC by-laws authorize a special shareholder's meeting. We believe that all parties have an interest in seeing Dateline's project move forward, and we encourage those parties to arrange that a shareholder meeting take place as soon as is reasonably possible. We have long witnessed the ASDC's Board and majority shareholder take advantage of its position of power over the remaining shareholders. We believe that the ASDC Board and the majority shareholder need to take more seriously the fiduciary responsibilities that by law they owe the minority shareholders.

## Order

1. The shareholders' application for a preliminary injunction, as it relates to a lack of the Legislature's approval of the original ASG/ASDC lease and Dateline sublease, is denied.

2. The shareholders' application for a preliminary injunction, as it relates to the absence of a shareholder vote on the Dateline sublease, is granted. Drabble, the Governor, the ASDC Board, and McMoore, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them are enjoined from further repairs and renovation of the portion of the Rainmaker Hotel premises included in the Dateline sublease. However, the preliminary injunction shall be automatically lifted when and if a meeting of the ASDC shareholders is convened to consider and they approve the sublease.

3. The Court's decisions on the pending oral motions for summary judgment by the remaining Defendants and the shareholders are deferred until the Court receives written confirmation that the ASDC shareholders have met and have either approved or disapproved the Dateline sublease.

It is so ordered.